UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WOLKER GEORGES, )<br>)<br>Movant )<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | 2:10-cr-00108-DBH-1<br>2:12-cv-00264-DBH |

### **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Wolker Georges has filed a motion (ECF No. 99) to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Georges's motion follows a jury verdict and judgment of conviction of conspiracy to possess with intent to distribute cocaine (ECF No. 83), and the voluntary dismissal of his appeal (ECF No. 97). In his section 2255 motion he enumerates eight grounds. Five are claims of ineffective assistance, including: (1) failure to advise on the risks and benefits of going to trial versus pleading guilty, including poor advice that was driven by lawyer fees; (2) failure to move to suppress evidence of an illegal search; (3) failure to communicate with Georges, including failure to convey a plea offer; (4) failure at trial to attack inconsistencies between the investigator's report and the trial testimony; and (5) failure to argue effectively against a gun enhancement at sentencing. Another claim concerns a discrepancy between his sentence and that of a co-conspirator who pleaded guilty. Finally, two are procedurally defaulted claims asserting that the search was illegal and the evidence was insufficient. I ordered the government to respond to the motion. (ECF No. 102.) The

government requests a summary dismissal. (ECF No. 111.) I recommend that the court deny the motion without an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Georges was indicted in June 2010 on one count for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and subject to the penalty provisions of section 841(b)(1)(C). (ECF No. 3.) Within a few days of the arraignment, Georges retained one of the two attorneys who represented him through trial, sentencing, and the notice of appeal, and previously appointed counsel was permitted to withdraw. Two months later, in late March 2011, another attorney also entered his appearance for Georges and likewise represented him through the trial, sentencing, and notice of appeal.

The jury trial was held over two days in late May 2011. (ECF Nos. 93, 94.) There were five witnesses, two of whom were law enforcement agents who took part in the raids that led to the charges. Two of the other witnesses, Ryan Petit and Christopher Albertini, had pleaded guilty to federal drug charges as a result of those raids. Ryan Petit was a 24-year-old long-time user of cocaine, ecstasy, and marijuana, whose apartment was searched and who agreed to cooperate as part of a guilty plea to charges of conspiracy to distribute and possess with intent to distribute cocaine. (Trial Transcript (TT) I at 40-41, 46, ECF No. 93.) As part of his cooperation following the search of his apartment he agreed to set up a telephone call to his supplier, Albertini, to attempt to obtain more drugs. Between the plea and sentencing, Petit was charged in state court with aggravated operation of a motor vehicle after being a habitual offender, for which he was sentenced to one year of imprisonment, and he was charged with operating under the influence of alcohol with two prior convictions, for which he was sentenced to an additional 30 days. (TT I at 43-44.) For his presentence cooperation, his federal sentence

was reduced from a guideline range of 60 to 71 months to a sentence of 39 months in federal prison, and he hoped for an even greater reduction based on his continued cooperation. (TT I at 45.)

Christopher Albertini was the other convict witness. He was a 26-year-old dealer of cocaine and user of marijuana and cocaine who leased an apartment with Georges in Portland and who obtained drugs from Georges. (TT I at 99-100, 103-04, 108.) He pleaded guilty to a federal charge of possession with intent to distribute cocaine as a result of the raids that led to the charges against Georges, and he was serving a sentence of 36 months. (TT I at 100.) He did not enter into a cooperation agreement with the government, and he testified pursuant to a court order and grant of immunity. (TT I at 101.)

Defense counsel cross-examined Petit about what might have been some inconsistencies between his proffer statements and his grand jury testimony concerning the number of Oxycontin pills and the amount of cocaine he bought from Albertini. (TT I at 61-65.) Defense counsel cross-examined Albertini on the basis that he had lied about the source of money he listed on a petition for remission of a seizure, by failing to admit that some of the money came from drug dealing. (TT I at 114-17.) The jury deliberated for just under 90 minutes and found Georges guilty. (TT II at 47-48, ECF No. 94.)

The Probation Office's revised presentence investigation report states that Georges was responsible for 1,236.05 grams of cocaine and 16 grams of Oxycodone, which were converted for sentencing purposes to 354.4 kilograms of marijuana equivalent. The revised report calculated Georges's base offense level to be 26 under U.S.S.G. § 2D1.1(c)(7), and added two levels for Georges's possession of a firearm in close proximity to drug proceeds, pursuant to section 2D1.1(b)(1). The Probation Office calculated a total offense level of 28 and a criminal

history category of II, which put the guideline sentencing range at 87 to 108 months of imprisonment, pursuant to the sentencing table at U.S.S.G. Chapter 5, Part A.[1]

Georges's sentencing memorandum argued against the two-level gun enhancement on the basis that Albertini testified that he had never seen Georges with a gun and had never seen the gun found in Georges's room, and therefore it is improbable that the gun was used in connection with the drug trafficking. (Defendant's Sentencing Memorandum at 1, ECF No. 81.) Georges also argued for a variation from the guidelines, pursuant to 18 U.S.C. §3553(a), based on his relative lack of criminal history, strong work history, strong family support, youth, intelligence, and educational achievements. (Defendant's Sentencing Memorandum at 2.)

At the sentencing hearing, Georges was represented by both of his attorneys. (Sentencing Transcript (ST) at 1, ECF No. 95.) Georges affirmed, in response to the court's inquiry, that he had read the revised presentence investigation report and discussed it with counsel. (ST at 3.) Georges also affirmed that the only dispute was whether a gun enhancement applied and where in the guideline range his sentence should be. (ST at 3.) The court found the sentencing facts as set forth in the revised presentence investigation report. (ST at 11.) The court found a base offense level of 26 and added two levels for the gun enhancement. (ST at 11.) The court sentenced Georges to 87 months of incarceration, the low end of the 87-108 months guideline range, followed by a term of four years of supervised release, and an assessment of $100. (Judgment at 2-3, 5.) See 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 5D1.2(c). Georges filed a timely notice of appeal in October 2011, but the appeal was voluntarily dismissed in July 2012, pursuant to Fed. R. App. P. 42(b). (ECF Nos. 84, 97.)

---

[1] The government's response to Georges's section 2255 motion does not accurately state the drug amounts as they are set forth in the revised report of the Probation Office. (Response at 6.)

In September 2012, Georges filed a timely pro se motion to vacate, set aside, or correct the sentence.  Georges's motion was not "signed under penalty of perjury by the movant or by a person authorized to sign it for the movant."  (Motion at 11.)  Rules Governing Section 2255 Proceedings for the United States District Courts 2(b)(5).

The government responded with a request for a summary dismissal of Georges's motion.  (Response at 1.)  The government also expanded the record by attaching a letter dated May 3, 2011, from both of Georges's trial counsel to Georges, which the government argues conclusively establishes that counsel explicitly advised Georges about (1) the risks and benefits of trial versus a plea; (2) the impact of the firearms enhancement on the sentence; (3) the prosecutor's deadline for Georges's response on the plea; and (4) the attorneys' recommendation that Georges "consider again, given the content of the Jencks material, whether proceeding to trial is in your best interests."  (Response at 10-11; Counsels' letter at 2, ECF No. 111-1.)  The letter also restates Georges's wishes as he had previously expressed them to counsel: "Specifically, you told us that the avoidance of the felony conviction was your primary objective, and that if going to trial might mean a couple more years in jail, you were willing to take that chance."  (Counsels' letter at 2.)

## LEGAL STANDARDS

Preliminarily, I note that a motion filed pursuant to 28 U.S.C. § 2255 must be signed under penalty of perjury, as required by Rule 2 of the Rules Governing Section 2255 Proceedings.  See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751 (1997).  A form for a section 2255 motion is appended to the Rules Governing Section 2255 Cases; the movant is not required to use the form, but it includes a space for each of the required elements of the motion, including the declaration under penalty of perjury.

A movant under section 2255 must show that his sentence was imposed in violation of the Constitution or other laws, that the court was without jurisdiction, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The "catch-all fourth category includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (quoting Hill v. United States, 368 U.S. 424, 428 (1962) (alterations and quotation marks omitted)).

An evidentiary hearing on a section 2255 motion is "the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003). "An evidentiary hearing is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Id. (quotation marks omitted). The movant must explain why he is entitled to relief; it is not sufficient "to refer to an act or omission of counsel . . . without indicating why it constituted gross impropriety or prejudicial misconduct." Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971) (per curiam) (denying the petitioner habeas corpus relief from a state court conviction on the grounds that he asserted ineffective assistance of counsel without providing the factual basis for the claim); see also Polanco v. United States, No. 92-2054, slip op. at 2, 989 F.2d 484, 1993 WL 72417, at *1, 1993 U.S. App. Lexis 4871, at *3 (1st Cir. Mar. 15, 1993) (per curiam) (applying the same standard to a section 2255 motion).

**DISCUSSION**

**1. Threshold Issue of Failure to Sign Under Oath**

The government points out that Georges failed to sign his motion under penalty of perjury, as required by Rule 2 of the Rules Governing Section 2255 Proceedings. (Response at 10 n.2.) See LaBonte, 70 F.3d at 1413. The requirement of a signature under oath is independent of the requirement that the application contain sufficient factual allegations, and failure to sign under oath is in itself grounds for dismissal. See id. It appears that Georges attempted to remedy his failure to sign the motion under oath by stating in a separately filed certificate of service that it was "under penalty of perjury." (Certificate of Service, ECF No. 112.) The separate filing of the certificate of service does not cure the defect as to the motion itself, but I do not recommend that the petition be summarily dismissed on this basis. If Georges had actually asserted nonconclusory factual allegations that might warrant an evidentiary hearing, I would recommend that the court give him the opportunity to submit those factual allegations signed under penalty of perjury. However, my review of the record does not indicate that Georges has alleged any concrete factual disputes about the receipt of the counsels' letter which is now part of the expanded record. The letter, as discussed below, is sufficient to refute the broad general allegations he makes about the statements made by counsel concerning the merits of going to trial even if those broad general allegations had been signed under penalty of perjury.

**2. Claims of Ineffective Assistance**

Georges's Sixth Amendment ineffective assistance claims are governed by the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail, Georges "must show that "counsel's representation 'fell below an objective standard of reasonableness,'" Padilla v. Kentucky, 559 U.S. 356, ---, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland, 466 U.S. at 688) and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). "Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies. This is especially true during trial, when time is short." Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000). "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

### a. Failure to advise on the benefits and risks of trial compared with plea

Georges argues that counsel did not explain the risks and benefits of accepting responsibility and entering a guilty plea or how he might obtain a reduction in the sentence under the sentencing guidelines. (Motion at 5.) Georges also argues that counsel "did not discuss any plea negotiations that were offered by the government." (Motion at 5.) He does not assert that he would have pleaded guilty, but rather that had he been "adequately informed of the details of the plea offering he would have been able to consider accepting it." (Motion at 5.) He asserts that his two retained attorneys gave him conflicting advice about whether to plead or go to trial, and his lead trial counsel was motivated by lawyer fees when he advised Georges to go to trial rather than plead guilty. (Motion at 6.) Georges asserts that the lead attorney asked him to pay half the cost of an appeal no later than the trial date, in case an appeal was necessary. (Motion at 6.)

The expanded record refutes Georges's assertions that counsel failed to advise him of the risks and benefits of a trial as compared with a plea. In the May 3, 2011, letter from both of his trial counsel to Georges, they noted his previously-expressed wish to take his chances on a trial, and they advised him to rethink that based on their review of the material produced by the government in advance of the trial. They predicted a base level of 26, increased by two points for the weapon and by an additional two points for his role as a leader, to a total offense level of

8

30.  Based on that and a criminal history category of II, they advised that Georges's sentencing range under this scenario would be 108 to 135 months.  They explained that with a plea, the court may opt to sentence below the guideline range, but they would not expect the court to do so after a trial.  They discussed the status of plea negotiations, explaining to Georges that a plea agreement would include a three-level reduction for acceptance of responsibility, and they conveyed the prosecutor's deadline for acceptance or rejection of the plea offer.

Georges's only rejoinder to the government's expanded record was that in his conversations with lead counsel, counsel expressed confidence that Georges had "a good shot at acquittal." (Reply at 2, ECF No. 113.)  I conclude that Georges's claim is "conclusively refuted as to the alleged facts by the files and records of the case."  See Moreno-Morales, 334 F.3d at 145; see also Railey v. Webb, 540 F.3d 393, 416 (6th Cir. 2008) (affirming the district court's conclusion that the state court's rejection of a claim of ineffective assistance of counsel was not contrary to or an unreasonable application of Strickland, 466 U.S. at 687, where the ineffective assistance claim was based in part on the conflicting advice of the defendant's attorneys about whether he should go to trial or plead guilty).

Georges adds that lead counsel advised him to go to trial based on the lawyer's desire for fees rather than because it was in Georges's best interest. (Motion at 6.)  This allegation fails because it is based on the incorrect factual premise that the lawyer's advice was that Georges go forward with a trial.  The government's expanded record shows that both of Georges's lawyers advised him to rethink his plan to go to trial due to the risks.  See Moreno-Morales, 334 F.3d at 145.  Counsels' obligation was to educate Georges about his options, not to select a course of action for him.  Georges's speculations about lawyer fees do not affect my conclusion for purposes of this section 2255 motion.

### b. Failure to move to suppress evidence

Georges argues that the search of the apartment he shared with Albertini does not fall within the exigent circumstances exception to the warrant requirement, and that counsel provided ineffective assistance by failing to file a motion to suppress the evidence obtained from the search. He argues that there was a period of at least two hours between the time officers started surveillance on Georges's residence at 9:20 p.m. and 11:20 p.m. when the search commenced, and in that time they could have obtained a warrant. (Motion at 4; Report of Investigation at 1-2, ECF No. 99-1.) He argues that the presence of firearms in the apartment did not create an exigency because the officers immediately detained both Albertini and Georges and neither was close to a firearm at that point. (Motion at 3-4.) He asserts that he was entitled to a suppression hearing because Petit's setup phone call to Albertini was not directly linked to him and therefore that call did not necessarily justify a search involving Georges, and the drugs found in plain view during the security sweep of Albertini's and George's apartment were not directly linked to him. (Motion at 2-3.)

In order to assess the Sixth Amendment issue of ineffective assistance, it is necessary to delve into the issue about which counsel was allegedly ineffective—here, the search that would have been the focus of a motion to suppress. "It is a well-established principle of Fourth Amendment law that warrantless searches inside a home are presumptively unreasonable." United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005) (citing Payton v. New York, 445 U.S. 573, 586 (1980)). Exigent circumstances provide an exception to the warrant requirement. United States v. D'Andrea, 648 F.3d 1, 11 (1st Cir. 2011). "The government bears the burden of proving exigent circumstances." Samboy, 433 F.3d at 158. "To show exigent circumstances, the police must reasonably believe that 'there is such a compelling necessity for immediate action as

will not brook the delay of obtaining a warrant.'" Id. (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999)).  One of the circumstances that supports a finding of exigent circumstances is "when delay would risk the destruction of evidence." Id.  This justification applies "particularly in drug cases." Id.  However, "[o]fficers are justified in relying on this exception only if they show an objectively reasonable basis for concluding that the loss or destruction of evidence is likely to occur." Id.  Georges also cites a violation of his due process rights under the Fifth Amendment, apparently because there was no evidentiary hearing concerning the suppression of evidence.  (Motion at 1-2, 10.)  He does not specify the evidence he would present at a suppression hearing, but rather states that the evidence would not be identified until the hearing.  (Motion at 10.)

"[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel."  Kimmelman v. Morrison, 477 U.S. 365, 384 (1986).  Whether the government could have met its burden of proving exigent circumstances or otherwise justified the search as a protective sweep to secure the premises while getting a warrant on these facts remains unknown.  The appropriate test regarding suppression under current Fourth Amendment jurisprudence requires only that the "police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment," provided their conduct preceding the exigency is otherwise reasonable.  Kentucky v. King, --- U.S. ---, ---, 131 S.Ct. 1849, 1858 (2011).  The report of investigation attached to Georges's motion gives something of a timeline of the events that occurred on the evening in question.  That document does not indicate what time Petit told officers that he could obtain cocaine from Georges and Albertini.  (Report at 1.)  It does state that at about 9:20 p.m. the officers drove Petit to where Albertini and Georges lived.  The setup phone call from Petit to Albertini took place at 10:45 p.m., and in that phone call Petit told

11

Albertini he could be at Albertini's apartment about 25 minutes from then. (Report at 2.) Petit knocked on Albertini's door at about 11:20 p.m. Whether, once probable cause was established, there was time for the officers involved in the searches of Petit's and Georges's apartments to obtain a warrant for Georges's apartment prior to their initial entry remains an issue of fact, and as such it may have provided grounds for a good faith motion to suppress, if not necessarily a successful motion. However, counsel's strategic decision to forego a dubious fact-bound motion to suppress does not fall below the objective standard of reasonableness for competent counsel. Counsel were well aware that independent evidence through the testimony of Petit and Albertini could support Georges's conviction and that evidence about the seized firearms would ordinarily be admissible in the context of the sentencing hearing in any event. United States v. Larios, 593 F.3d 82, 87 (1st Cir. 2010) (noting that the exclusionary rule ordinarily does not apply at sentencing hearings). The firearm evidence would have had no bearing on Georges's conviction for the underlying drug conspiracy. Furthermore, in all probability the government would have argued that the evidence, including money and some additional drug-related evidence, seized pursuant to the warrant obtained following the initial warrantless entry was admissible because the probable cause to believe drugs were in the apartment existed prior to the initial entry and the officers' initial sweep with the plain view sighting of some drugs and the discovery of the firearms did not necessarily provide the probable cause for the search pursuant to the warrant.

     I further conclude that in any event Georges cannot meet the second prong of the Strickland analysis, which is to show prejudice. There was ample evidence to support a guilty verdict even without resort to the evidence seized as a result of the search of Georges's and Albertini's apartment. The other evidence consisted of the testimony of Petit and Albertini that they had dealt drugs with Georges, the evidence seized in Petit's apartment, and the testimony of

the officer who overheard Petit's setup phone call to Albertini. I conclude that there exists no "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Padilla, 130 S. Ct. at 1482 (quoting Strickland, 466 U.S. at 694).

Georges also cites the "knock and announce" statute, 18 U.S.C. §3109, arguing that this constitutes a statutory basis for determining that the search was illegal. (Motion at 4.) There is no applicability of that statute to these facts. The informant, not the officers, knocked on the door and the officers do not claim that they announced their presence prior to entry, thereby creating the exigency. In that sense this case is unlike King, 131 S. Ct. at 1854. Section 3109 provides that officers may "break open" the door if refused admittance. Here, there appears to have been no statutory violation because even if the officers' entry could be deemed forcible under the statute, Albertini had refused admittance. In any event, however, the statute is inapplicable to Georges's argument about the need for a motion to suppress because the Supreme Court has held that the exclusionary rule does not apply to knock-and-announce violations. Hudson v. Michigan, 547 U.S. 586, 590-602 (2006). Thus, the knock-and-announce statute would not have provided any authority for a suppression motion, and Georges has not met either prong of Strickland with this argument. See Strickland, 466 U.S. at 687.

   c. **Failure to Communicate**

I have addressed the issue of the plea offer above, noting that the government's expanded record conclusively refutes Georges's assertion that his attorneys failed to communicate a plea offer to him. See Moreno-Morales, 334 F.3d at 145. I discern no other specific allegation in Georges's motion that counsel failed to communicate on any matter. "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." David, 134 F.3d at 478. I conclude that Georges

13

has failed to demonstrate either deficient performance by counsel or prejudice on his claim that counsel failed to communicate with him.  See Strickland, 466 U.S. at 687.

    **d.  Failure to Attack Inconsistencies at Trial**

Georges argues that trial counsel did not address inconsistencies and differences between the investigator's report and the trial testimony.  (Motion at 9.)  He asserts that the trial outcome would have been different if counsel had highlighted inconsistencies, but he does not specify what those inconsistencies are.  (Motion at 9.)  Counsel did point out in closing at trial that Petit's story changed over time concerning the number of times he bought cocaine from Albertini.  (TT II at 27.)  "Judicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  Strickland, 466 U.S. at 689.  I conclude that Georges has failed to demonstrate either deficient performance by counsel or prejudice on his claim that counsel failed to address inconsistencies between the investigator's report and the trial testimony.  See id. at 687.

    **e.  Failure to Argue Against a Gun Enhancement at Sentencing**

Georges acknowledged that counsel argued against a gun enhancement in the sentencing memorandum and at the sentencing hearing, but he asserts that counsel nevertheless failed to include in that argument that (1) the guns were not a danger during the pre-warrant security sweep of Georges's and Albertini's apartment because Albertini was on the first floor when the officers entered and his gun was upstairs, and Georges's gun was under his mattress and not near him; and (2) Albertini's gun enhancement was dismissed but Georges's was not, causing a discrepancy in their sentences which he argues is in contravention of the sentencing guidelines.  (Motion at 3, 8, 9-10.)  Georges argues for a reduction in his sentence by elimination of the gun enhancement.  (Motion at 11.)

14

Counsels' May 3, 2011, letter to Georges states: "Because a gun was found in close proximity to the drugs in Albertini's room as well as the cash in your room, we believe that a two-level enhancement will apply . . . ." (Counsels' letter at 1.)  The presentence investigation report also addresses the gun enhancement, and Georges stated in response to court questioning at the sentencing hearing that he had read the report and discussed it with counsel.  (ST at 2-3.)  Georges's sentencing memorandum explicitly addresses the gun enhancement and argues against it on the basis that Albertini testified that he had never seen Georges with a gun and had never seen the gun found in Georges's room, and therefore it was clearly improbable that the gun was connected to the offense.  (Defendant's Sentencing Memorandum at 1.)  I conclude that Georges has failed to demonstrate either deficient performance by counsel or prejudice on his claim that counsel failed to argue that the guns were not a danger.  See Strickland, 466 U.S. at 687.

3. **Claim of Sentencing Disparity**

Georges's sentencing disparity claim is focused on the gun enhancement.  He argues that because Albertini's gun enhancement was dismissed when he pleaded guilty, but Georges's was not in his sentencing after the trial, this contravened 18 U.S.C. § 3553 and the sentencing guidelines.  (Motion at 8, 9-10.)  Georges's argument has no merit; his sentence was within the sentencing guidelines, and "a discrepancy between sentences imposed on those who have stood trial and those who have not does not constitute reversible error."  United States v. Del Prado-Montero, 740 F.2d 113, 115 (1st Cir. 1984).

4. **Procedurally Defaulted Claims**

Georges includes in his motion two claims that are procedurally defaulted because they could have been resolved in a direct appeal.  See Bousley v. United States, 523 U.S. 614, 622 (1998).  Procedurally defaulted claims may only be considered in the context of a section 2255 motion if the movant establishes either cause for the default and actual prejudice from it or,

15

alternatively, "actual innocence."  See id.  "To establish actual innocence, petitioner must demonstrate that, '"in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'"  Id. (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970))).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  Id. at 624.

Georges's first procedurally defaulted claim is that the search was illegal because it violated his Fourth and Fifth Amendment rights and the federal "knock and announce" statute, 18 U.S.C. § 3109.  (Motion at 1-2.)  I have addressed these arguments above within the discussion about counsels' failure to file a motion to suppress evidence.  I therefore do not revisit them here except to add my conclusion that Georges has made no meaningful showing of cause for the default or actual prejudice from the introduction of the evidence obtained in the search, and he has also failed to make any showing on the alternate ground of actual innocence.

Georges's second procedurally defaulted claim is that there is insufficient evidence to support the conviction.  (Motion at 3, 8-9.)  He bases this argument on the fact that he was not part of the phone conversation between Petit and Albertini; Albertini answered the door when Petit knocked; and Georges was in his room upstairs, unaware of the phone conversation or of any activities taking place on the floor below.  (Motion at 8-9.)  Georges maintains that due to insufficient evidence, he is "actually innocent of any participation in the sale and distribution of cocaine."  (Motion at 8.)  Georges has made no showing of cause or prejudice or alternatively of actual, factual innocence.

## CONCLUSION

For the reasons above I recommend that the Court summarily deny this 28 U.S.C. § 2255 motion and recommend that the Court deny a certificate of appealability in the event Georges files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. §2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 11, 2013

/s/Margaret J. Kravchuk
U.S. Magistrate Judge